UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| ARCIDES SANTIAGO, | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
|     v. | )   No. 2:15 CV 358 |
| | ) |
| THE CITY OF EAST CHICAGO, INDIANA, *et al.*, | ) |
| | ) |
|     **Defendants.** | ) |

## OPINION and ORDER

This matter is before the court on the motion for summary judgment filed by the defendants, the City of East Chicago, Indiana ("the City"), and Frank Maldonado, the Commander of the East Chicago Police Department. For the reasons stated below, defendants' motion (DE # 22) will be granted.

### I.    BACKGROUND

Plaintiff originally filed his 42 U.S.C. § 1983 civil rights complaint against the defendants in the Lake County Superior Court in Crown Point, Indiana. (DE # 3.) Defendants removed the action to the Northern District of Indiana. (DE # 1.) In his complaint, plaintiff alleges that defendants retaliated against him in violation of his First Amendment right to freedom of speech.[1] (*Id.* at 1.)

Plaintiff has been employed as a police officer with the City of East Chicago Police Department since 1998. (DE # 3 at 1.) On February 5, 12, and 15, 2015, plaintiff attended public hearings regarding a fellow police officer, Timothy Leimbach. (DE # 23 at 2.)[2] Plaintiff alleges that at the first hearing Commander Maldonado told him to sit on "this side," which plaintiff understood to mean "the side that supported the administration and that opposed Officer Leimbach." (DE # 36 at 10.) Plaintiff complied with the directive. (*Id.*) However, at the following two hearings, plaintiff sat on the side of the room that he believed demonstrated his support for Officer Leimbach. (DE # 3 at 6.) Plaintiff was off-duty at the time of the hearings. (DE # 36 at 10.) He claims that he attended the hearings in order to support Officer Leimbach and protest what he believed was an unfair proceeding against the officer. (DE # 3 at 4, 6.)

On February 21, 2015, plaintiff left for a previously scheduled trip to Mexico. (*Id.* at 4.) On March 16, 2015, four days after he returned to work, he was transferred

---

[1] In his initial recitation of his claim, plaintiff asserted that defendants also violated his rights under the Fourth and Fourteenth Amendments. (DE # 3 at 1.) Thus, in their motion for summary judgment, defendants addressed all possible Fourth and Fourteenth Amendment allegations plaintiff may have intended to assert. However, plaintiff later clarified that he only intended to pursue a First Amendment claim against defendants. *See Wackett v. City of Beaver Dam, Wis.*, 642 F.3d 578, 581 (7th Cir. 2011) ("[T]he First Amendment, made applicable to the states through the Fourteenth Amendment, prohibits the government from retaliating against its employees for engaging in protected speech."). Plaintiff explicitly abandoned the Fourth Amendment claim he originally identified in his complaint.

[2] Neither party identifies the specific subject-matter or objective of these hearings.

from his assignment in the records office to an assignment in the City detention center. (*Id.* at 4-5.) Plaintiff claims that Maldonado played a role in his transfer. (DE # 36 at 3.) According to plaintiff, the City had a practice or custom of using reassignment to the detention center as a means to punish officers that the administration "did not like." (*Id.* at 10.) He claims that his reassignment to the detention center was intended to punish him "because [he] did not sit on the administration's side [at the hearings] and the administration did not like that." (DE # 36 at 6.) He argues that an assignment in the detention center was less desirable than other assignments due to the conditions of the facility and the increased risk of harm officers faced from the occupants of the facility.[3] (DE # 3 at 5.)

Defendants now move for summary judgment, identifying numerous grounds which they claim entitle them to judgment in their favor. (DE # 22.) First, defendants argue that plaintiff did not engage in conduct protected by the First Amendment. (DE # 23 at 11-15.) They also contend that plaintiff was reassigned to the detention center due to operational staffing needs, and not as a form of punishment or retaliation. (*Id.* at 15-16.) Finally, defendants argue that they are entitled to summary judgment because there is insufficient evidence that Commander Maldonado was personally

---

[3] Plaintiff also claims that defendants retaliated against him by refusing to pay him specialty pay for working in the detention center and by denying his request for leave to care for his infirm father. (*Id.* at 6.) In their motion, defendants submit evidence that plaintiff did receive specialty pay and was granted leave to care for his father. (DE # 23.) Plaintiff does not respond to this evidence or address defendants' arguments. He has therefore abandoned these particular claims. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010) ("Failure to respond to an argument . . . results in waiver.").

3

involved in plaintiff's reassignment and insufficient evidence that the City had a custom or practice that violated plaintiff's First Amendment rights. (*Id.* at 11-18.)

## II. LEGAL STANDARD

Federal Rule of Civil Procedure 56 requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In responding to a motion for summary judgment, the non-moving party must identify specific facts establishing that there is a genuine issue of fact for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986); *Palmer v. Marion County*, 327 F.3d 588, 595 (7th Cir. 2003). In doing so, the non-moving party cannot rest on the pleadings alone, but must present fresh proof in support of its position. *Anderson*, 477 U.S. at 248; *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). A dispute about a material fact is genuine only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. If no reasonable jury could find for the non-moving party, then there is no "genuine" dispute. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

The court's role in deciding a summary judgment motion is not to evaluate the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). In viewing the facts presented on a motion for summary judgment, a court

4

must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences and resolve all doubts in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995).

III.    **ANALYSIS**

    A.    *Expressive Conduct*

In order for a public employee, such as plaintiff, to successfully establish that he was retaliated against in violation of his First Amendment right to freedom of speech, he must first establish that he engaged in constitutionally protected speech. *See Aldous v. City of Galena, Illinois*, 702 F. App'x 439, 441 (7th Cir. 2017). "The First Amendment literally forbids the abridgment only of 'speech,' but we have long recognized that its protection does not end at the spoken or written word." *Texas v. Johnson*, 491 U.S. 397, 405 (1989). Rather, "conduct may be 'sufficiently imbued with elements of communication to fall within the scope of the First and Fourteenth Amendments.'" *Id.* (internal citation omitted).

"In deciding whether particular conduct possesses sufficient communicative elements to bring the First Amendment into play, we have asked whether '[a]n intent to convey a particularized message was present, and [whether] the likelihood was great that the message would be understood by those who viewed it.'" *Id.* (internal citation omitted). *See also Tinker v. Des Moines Indep. Comm. School Dist.*, 393 U.S. 503, 505 (1969) (wearing arm bands is protected expressive conduct); *Brown v. State of La.*, 383 U.S. 131, 141 (1966) (participating in sit-in is protected expressive conduct). Expressive conduct is

5

protected where it is "'inherently expressive.'" *Tagami v. City of Chicago*, 875 F.3d 375, 378 (7th Cir. 2017), *as amended* (Dec. 11, 2017) (emphasis in original) (*quoting Rumsfeld v. Forum for Acad. & Inst'al Rights, Inc.*, 547 U.S. 47, 66 (2006)). "To fall within the scope of this doctrine, the conduct in question must comprehensively communicate its own message without additional speech." *Id.*

Here, plaintiff's presence and location at Officer Leimbech's hearings cannot be said to have been inherently expressive because it contained no particularized message that would have been overwhelmingly apparent to those who saw him. While it is certainly true that, in certain cases, a person's presence is sufficient to amount to expressive conduct, *see e.g. Brown*, 383 U.S. at 141 (black protestors' presence in "white-only" library was protected expressive conduct), this is not true of this case. Here, the fact that plaintiff sat on the side of the room where Officer Leimbach and his attorney also sat, did not clearly convey any particular message. Plaintiff was off-duty at the time and there is no evidence that he attended the hearings in his police uniform. Thus, there is no reason to believe that a casual observer would have understood that he was a police officer demonstrating his support for a fellow officer. To the extent that his presence conveyed any message at all, there are several ways in which it could have been construed. For example, an observer could reasonably have concluded that plaintiff was: (i) a member of the media; (ii) a personal friend or family member of Officer Leimach; (iii) a personal friend or family member of another person involved in the underlying incident; (iv) a witness to be called in the hearings; or (v) or some other

interested person. Given the ambiguity of plaintiff's conduct, his presence does not qualify as "expressive conduct" protected by the First Amendment.

B. *Public Employee First Amendment Retaliation Claims*

Even to the extent that plaintiff's presence and location at Officer Leimbach's hearings could be considered expressive conduct under the First Amendment, plaintiff was a public employee at the time of his conduct and therefore there are additional factors to consider before this court can determine whether his speech was protected. The question of whether a public employee's speech is protected by the First Amendment is a question of law for determination by the district court. *Gustafson v. Jones*, 290 F.3d 895, 906 (7th Cir. 2002).

To establish a First Amendment retaliation claim, a public employee's speech "must be made as a private citizen (rather than pursuant to official duties), and must involve a matter of public concern." *Aldous v. City of Galena, Ill.*, 702 F. App'x 439, 441 (7th Cir. 2017); *see also Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013). "The 'public concern' element is satisfied if the speech can fairly be said to relate to a matter of political, social, or other concern to the community, rather than merely a personal grievance of interest only to the employee." *Gustafson*, 290 F.3d at 907. "The Supreme Court has defined 'public concern' to mean 'legitimate news interest,' or 'a subject of general interest and of value and concern to the public at the time of publication.'" *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) (*quoting City of San Diego v. Roe*, 543 U.S. 77, 83-84 (2004) (per curiam)).

7

"Whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement . . . ." *Connick v. Myers*, 461 U.S. 138, 147-48 (1983). "The *Connick* test requires us to look at the overall objective or point of the speech, as ascertained by those three factors." *Kubiak v. City of Chicago*, 810 F.3d 476, 482-84 (7th Cir. 2016) (internal citations omitted), *cert. denied sub nom. Kubiak v. City of Chicago, Ill.*, 137 S. Ct. 491 (2016). "[C]ontent 'remains the most important factor in determining whether speech addresses a matter of public concern.'" *Kristofek*, 712 F.3d at 984 (internal citation omitted). The court must ascertain whether the objective of the speech was to shed light on some wrongdoing or whether it was to promote a purely private interest. *Gustafson*, 290 F.3d at 907-08.

Complaints about personnel matters generally do not address matters of public concern. *See Wallscetti v. Fox*, 258 F.3d 662, 667 (7th Cir. 2001); *see also Connick*, 461 U.S. at 148 (determining that speech regarding confidence in supervisors, office morale, and the need for a grievance committee were outgrowths of a personnel dispute and did not address a matter of public concern). "To presume that all matters which transpire within a government office are of public concern would mean that virtually every remark . . . would plant the seed of a constitutional case . . . the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick*, 461 U.S. at 149.

The first step in the *Connick* analysis is to consider the content of plaintiff's conduct. As discussed in the preceding section, plaintiff's claim is doomed by the fact

8

that his conduct did not articulate any clear message. The Seventh Circuit has consistently held that where the content of speech is vague, the speech cannot be said to address a matter of public concern, and the defendants of the case are entitled to summary judgment. For example, in *Nagel v. Village of Calument Park*, 554 F.3d 1106 (7th Cir. 2009), the plaintiff deputy sheriff made statements at a labor meeting in his capacity as a union representative regarding officer safety within the community. *Id.* at 1123. He claimed that administrators disciplined him in retaliation for these statements. The Seventh Circuit noted that while the issue of police manpower "could, as a general matter, be of public concern, the subject matter alone does not convey constitutional protection to his statements." *Id.* The court found that because it was unclear what exactly the plaintiff had said during the meeting, the content and context of the statements could not be determined, and there was insufficient evidence that plaintiff's statements addressed a matter of public concern. *Id.* at 1124. The court thus affirmed the district court's decision to grant defendants motion for summary judgment.

Similarly, in *Olendzki v. Rossi*, 765 F.3d 742, 748–49 (7th Cir. 2014), the Seventh Circuit affirmed the district court's decision to grant summary judgment against the plaintiff, a prison psychologist, who claimed administrators retaliated against him after he made critical statements regarding prison sanitation and safety. *Id.* However, the record did not reveal what exactly the plaintiff had said. *Id.* The Seventh Circuit held that because the content and form of the plaintiff's speech could not be determined from the record, the defendants were entitled to judgment in their favor. *Id. See also*

*Brooks v. Univ. of Wisconsin Bd. of Regents*, 406 F.3d 476, 479-81 (7th Cir. 2005) ("Because the plaintiffs submitted little more than vague characterizations of their resistance to department reorganization, with little to no evidence of specific commentary on matters of public concern, we believe summary judgment was appropriate."); *Michael v. St. Joseph Cty.*, 259 F.3d 842, 846 (7th Cir. 2001) (plaintiff failed to demonstrate retaliation where a vague characterization of what was said was the only evidence of protected speech).

In this case, as in *Nagle* and *Olendzki*, the precise content of plaintiff's expression cannot be determined. Therefore, the first and most important element of the *Connick* analysis weighs against finding that plaintiff's conduct addressed a matter of public concern.

The second element of the *Connick* analysis, the motive for plaintiff's conduct, also suggests that plaintiff's presence did not address a matter of public concern. Plaintiff claims that he attended the hearings in order to protest the unfairness of the proceedings against Officer Leimbach, and to demonstrate his support of Officer Leimbach. However, he does not identify the subject-matter of the hearings. Thus, it is unclear why the hearings would be of interest to persons outside of the police department. "Although 'police protection and public safety are generally a matter of public concern,' not all speech by police department employees is 'upon matters of public concern' under the *Connick* analysis." *Schad v. Jones*, 415 F.3d 671, 674-75 (7th Cir. 2005) (internal citations omitted). "[W]here the overriding reason for the speech is the

concerns of a few individuals whose careers may be on the line, the speech looks much more like an internal personal dispute than an effort to make the public aware of wrongdoing." *Colburn v. Trustees of Ind. Univ.*, 973 F.2d 581, 587 (7th Cir. 1992)

In the absence of any alternative explanation, this court is left to conclude that these hearings were merely of personal interest to plaintiff. Personnel grievances, like the one at issue here, do not address matters of public concern. *Compare Kubiak*, 810 F.3d at 483 (female police officer's report to supervisors that she feared physical violence from a fellow police officer was not a matter of public concern); *Houskins v. Sheahan*, 549 F.3d 480, 492 (7th Cir. 2008) (social worker's police report stating that correctional officer struck her in the face was not a matter of public concern); *with Swetlik v. Crawford*, 738 F.3d 818, 827 (7th Cir. 2013) (plaintiff's accusation that police chief instructed officer to lie to other agencies did address a matter of public concern because it "implicated the chief's integrity and ability to fulfill his duties as the head of the police department"). Therefore, the second element of the *Connick* analysis weighs against finding that plaintiff's conduct addressed a matter of public concern.

Finally, the court considers the third element of the *Connick* analysis, the context in which plaintiff's expression occurred. Here, the only evidence this court has regarding the context of plaintiff's conduct is that it took place at a public hearing. The fact that the hearing was public, without more, is insufficient to establish that plaintiff's presence addressed a matter of public concern. *See Bivens v. Trent*, 591 F.3d 555, 561-62 (7th Cir. 2010) (holding that a matter may touch upon a subject of potential interest to

the public, or in fact benefit the public, but nevertheless fail to raise a matter of public concern sufficient to warrant protection under the First Amendment).

On the whole, consideration of the content, motive, and context of plaintiff's conduct at the hearing does not support a finding that plaintiff's presence addressed a matter of public concern. Thus, plaintiff's conduct was not protected expression under the First Amendment, and defendants are entitled to judgment in their favor.

C.   *Motion to Strike*

One final matter remains before this court. Defendants have filed a motion to strike more than 70 factual allegations from plaintiff's response brief on the basis that the allegations contain mischaracterizations, and irrelevant or speculative statements.[4] (DE # 38.)

Motions to strike are usually only granted in circumstances where the contested evidence causes prejudice to the moving party. *Kuntzman v. Wal-Mart*, 673 F.Supp. 2d 690, 695 (N.D. Ind. 2009). That is not the case here. When ruling on the motion for summary judgment, the court is capable of sifting through the evidence, arguments, and purported disputes under the applicable federal rules and case law, giving each purported dispute the credit to which it is due. To the extent that designated evidence by either party is inadmissible in this case, the court disregards that evidence in evaluating the motions for summary judgment. *Gilfand v. Planey*, 2011 WL 4036110, at *5

---

[4] Defendants move to strike pursuant to Federal Rule of Civil Procedure 12(f). However, this is improper, as Rule 12(f) pertains exclusively to pleadings.

(N.D. Ill. Sept. 9, 2011) ("[The court] can determine the facts relevant to summary judgment and disregard extraneous or improper statements."). A line-by-line discussion of this motion, and the alleged mischaracterizations of fact referenced therein, is unnecessary. It is the function of a court, with or without a motion to strike, to review carefully all of the briefing related to a motion for summary judgment and to eliminate from consideration any argument, conclusion, or assertion unsupported by the documented evidence in the record. *Mayes v. City of Hammond, Ind.*, 442 F. Supp. 2d 587, 596 (N.D. Ind. 2006). Therefore, there is no need to strike the affidavits based on admissibility concerns. Moreover, none of the paragraphs at issue were considered in the resolution of defendants' motion for summary judgment. Accordingly, the motion will be denied as moot.

IV.   **CONCLUSION**

For these reasons, the court **GRANTS** defendants' motion for summary judgment (DE # 22), and **DENIES** defendants' motion to strike (DE # 38). The court **DIRECTS** the Clerk to **ENTER FINAL JUDGMENT** stating:

> Judgment is entered in favor of defendants City of East Chicago, Indiana, and Frank Maldonado, and against plaintiff Arcides Santiago, who shall take nothing by way of his complaint.

**SO ORDERED.**

Date: January 26, 2018

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT